UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
TWO KIDS FROM QUEENS, INC., and
1812 CLOTHING CORP. d/b/a/ "Max &
Gino's All American Clothing Co.,

                    Plaintiffs,

    -against-

J&S KIDSWEAR, INC., R.B.K.
CHILDREN'S WEAR, INC., and RON
KLEIN, individually, and d.b.a "DENNY'S
CHILDRENSWEAR," FLOWERS BY
ZOE, INC., CANTEEN, INC., and
SO NIKKI, INC., individually, and d/b/a
"SO NIKKI" and/or "LUCY,"

                    Defendants.
-------------------------------------------------------X

**MEMORANDUM & ORDER**

Civil Action No. 09-3690

**APPEARANCES**:

**Stein Law, P.C.**
Attorneys for Plaintiffs
24 Woodbine Avenue, Suite 4
Northport, New York 11768
By:    Mitchell A. Stein, Esq.
           Erik B. Zarkosky, Esq.

**Siller Wilk LLP**
Attorneys for Defendants J & S Kidswear, Inc., R.B.K. Children's Wear, Inc., Ron Klein, as an individual and Ron Klein, d/b/a/ Denny's Childrenswear
675 Third Avenue, 9th Floor
New York, New York 10017
By:    M. William Scherer, Esq.

**Natter & Natter**
Attorneys for Defendants J & S Kidswear, Inc., R.B.K. Children's Wear, Inc., Ron Klein, as an individual and Ron Klein, d/b/a/ Denny's Childrenswear
501 Fifth Avenue
New York, New York 10017
By:    Seth Natter, Esq.

**HURLEY, Senior District Judge:**

The purpose of this memorandum is to address the threshold issue of whether there was a delay by Plaintiff in seeking a preliminary injunction sufficient to deny said relief. For the reasons set forth below, the Court concludes that there was such a delay and accordingly denies the motion for a preliminary injunction. Given the nature of the claims, however, the Court shall order expedited discovery and an expedited trial of the merits.

## Background

Plaintiffs Two Kids from Queens, Inc. and 1812 Clothing Corp. ("Plaintiffs") commenced this action on August 25, 2009 seeking "injunctive relief and money damages" for defendants' alleged "deliberate trade dress and copyright infringement." Compl. at ¶ 1. Named as defendants in the complaint are J & S Kidswear, Inc. ("J&S"), R.B.K Children's Wear, Inc. ("R.B.K.") and Ron Klein, individually and doing business as Denny's Childrenswear ("Klein") (J&S, R.B.K and Klein are collectively referred to as the "Defendants"), Flowers by Zoe, Inc., Canteen Inc., and So Nikki, Inc. However, Plaintiffs stipulated to dismissal of the claims against Flowers by Zoe, Inc., Canteen Inc., and So Nikki, Inc. ("Dismissed Defendants") and therefore only the claims against Defendants remain.

According to the allegation in the Complaint, Plaintiffs began selling their unique apparel in December 2006, the nine distinctive elements of which constitute trade dress, under the trademark "Butter Super Soft." The trade dress consists of the following:

> [1.] <u>R&R Pattern</u>: in the center of the rear panel of the garment, sequin rhinestones and rhinestuds are arranged in an iridescent and color-specific graphic array, together arranged to reflect a symbol.
> [2.] <u>First Lettering</u>: in a curvature manner above the R&R Pattern, bold lettering is provided in a non-serifed font, with the letters all

comprised of the same color ("Color 1");

[3.] <u>Second Lettering</u>: in a straight line manner below the R&R pattern, bold lettering is employed in a non-serifed font, with the letters all comprised of the same color but a color differing from Color 1 in the First Lettering (and often of the color white) ("Color 2");

[4.] <u>Subscript Symbol</u>: underlying the Second lettering, a subscript symbol is used representing a smaller but identifying similar version of the R&R Pattern symbol, and comprised of Color 1;

[5.] <u>Third Lettering</u>: advancing downwardly on a sleeve from shoulder to wrist band, bold lettering is shown in a non-serifed font, with the letters all comprised of the same color but of a color differing from the First and Second Bold Lettering (and often of the color yellow);

[6.] <u>Fourth Lettering</u>: advancing downwardly on the second sleeve from shoulder to wrist band, script-styled lettering (I.E. a non-bold font) is employed with the letters all comprised of the same color but of a color differing from the First, Second, and Third Lettering;

[7.] <u>Thematic Similarity</u>: all elements "work together" to impart a theme reminiscent of themes from music and an era of the 1960s though the 1970s in a color array;

[8.] <u>Material Selection</u>: each garment is comprised of a material of sufficient weight to permit garment dyeing and washing, in preparation for, and in advance of, application of elements [1] through [6]; and

[9.] <u>Color Array</u>: the garments are developed in an array of six (6) pantone-specific colors selected from thousands of available pantone colors, which are obtained from repeating a dyeing and washing process against "blanks."

Compl. ¶ 27. Effective June 18, 2009 and August 7, 2009 Plaintiffs were granted a copyright in the R&R Pattern's color arrangement of the sequins (United States Copyright Registration Numbers VA 1-670-715 and VA 1-675-368). Compl. ¶ 31.

It is alleged that between November 5, 2008 and June 12, 2009 Defendants purchased from Plaintiffs for resale in excess of fifteen hundred (1500) garments bearing Plaintiffs' trade dress, trademarks and copyrights. Plaintiffs claim that, having observed the commercial success of the garments, the latter of Defendants' purchases of authentic garments were made in order to

3

copy them and then sell the copies in their stores. Plaintiffs claim to have discovered Defendants' sale of allegedly infringing goods in the first half of June 2009.

On or about June 15, 2009, Plaintiffs served Defendants with a cease and desist letter. Three days later, on June 18, 2009, Plaintiffs filed, on an expedited basis, their first copyright application, which was granted on July 6, 2009, effective on the date of filing. On August 7, 2009, Plaintiffs filed the second copyright application which was granted on August 21, 2009, effective on the date of filing. Three days after the receipt of the second copyright, this action was commenced.

On September 14, 2009 Plaintiffs agreed to extend to October 14, 2009 Defendants' time to answer in exchange for Defendants' agreement not to assert that Plaintiffs' "consent to the extension of time prejudices any rights or remedies that may be available to them." (Ex. C to Stein Declar. in Further Supp. of Prelim. Inj.) By stipulations filed November 20, 2009 and November 23, 2009, Plaintiffs dismissed the claims against Flowers by Zoe, and against So Nikki and Canteen Inc., respectively. On November 25, 2009, Plaintiff filed a proposed Order to Show Cause seeking expedited discovery and a preliminary injunction, proposing December 16, 2009 for the hearing on the request for a preliminary injunction.

**Discussion**

"A preliminary injunction may be granted only upon a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting relief." *Bourne Co. v. Tower Records, Inc.*, 976 F.2d 99, 101 (2d Cir. 1992) (quoting *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985).

4

"The movant's demonstration of irreparable harm comprises the 'the single most important prerequisite for the issuance of a preliminary injunction.'. . . Due to the importance of this factor, 'the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" *Pankos Diner Corp. v. Nassau County Legislature*, 321 F. Supp. 2d 520, 524 (E.D.N.Y. 2003) (citations omitted).

Irreparable harm may be presumed when a plaintiff establishes a prima facie case of copyright or trademark infringement. *See, e.g., Bourne,* 976 F.2d at 101; *Kuklachev v. Gelfman*, 629 F. Supp. 2d 236, 249 (E.D.N.Y. 2008), *aff'd,* 2009 WL 3326629 (2d Cir. Oct. 16, 2009) (Summary Order). A party's delay in enforcing its trademark or copyright may, however, rebut the presumption of irreparable harm. *See, e.g., Tough Traveler, ltd. v. Outbound Prods.,* 60 F.3d 964, 968 (2d Cir. 1995) ("presumption of irreparable harm is inoperative if the plaintiff had delayed in either bringing suit or in moving for preliminary injunctive relief. . . . Though such delay may not warrant the denial of ultimate relief, it may 'standing alone preclude the granting of preliminary injunctive relief.'") (citations and ellipses omitted); *Bourne,* 976 F.2d at 101; *Citibank, N.A. v. Citytrust,* 756 F.2d 273 (2d Cir. 1985) (presumption of irreparable harm negated by ten week delay between discovery of claimed infringement and commencement of law suit); *see generally Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.* 60 F.3d 27, 39 (2d Cir. 1995) (courts should consider delay in assessing irreparable harm). "Although delay may not negate the presumption of irreparable harm if the delay was caused by the plaintiff's ignorance of the defendant's competing product or the plaintiff's making good faith efforts to investigate the alleged infringement . . . if it is not so explainable, 'delay alone may justify denial of a preliminary injunction.'" *Tough Traveler*, 60 F.3d at 968 (quoting *Citibank*, 756 F.2d at 276).

5

Plaintiffs rely on the presumption of irreparable harm that arises from the alleged violation of their trade dress, trademark and copyrights. Plaintiffs delayed more than two months from mid June 2009, when they learned of the allegedly infringing conduct and sent the cease and desist letter, to commencement of the present action on August 25, 2009. Plaintiffs then waited another three months before bringing on the order to show cause seeking preliminary relief. The question is whether these delays destroy any presumption of irreparable harm assuming arguendo a prima facie case of infringement has been shown.

Plaintiffs attempt to explain the delay between the cease and desist letter and commencement of the action as necessitated by the need to secure the copyrights, pointing out that the action was commenced immediately upon receipt of the second copyright. The Court is less than impressed by this explanation given it does not affect the claims for the alleged violation of Plaintiffs' trade dress and trademark.

Even putting aside the delay in commencing this action, the Court is underwhelmed by the explanation for the delay between the commencement of the action and the seeking of preliminary injunctive relief. According to Plaintiffs, the delay was occasioned by the courtesy extended to Defendants in granting them an extension of time until October 14, 2009 to respond to the complaint. However, the two events are not tethered together. Indeed, in cases such as this, motions for preliminary injunctions are often brought on by order to show cause filed simultaneously with the complaint. Moreover importantly, Plaintiffs granted the extension knowing that the allegedly infringing conduct was ongoing and thus Plaintiffs' own conduct is antithetical to a claim of irreparable harm independent of any promise of no prejudice by Defendants. Finally, Plaintiffs waited nearly six weeks after Defendants' response was due to

seek preliminary relief.

That Plaintiffs may have been negotiating with Dismissed Defendants does not provide an excuse for not seeking relief against Defendants, especially in view of Plaintiffs' assertions that Defendants refused to meet and, in fact, engaged in alleged dilatory tactics. (*See* Stein Declar. in Further Supp. at ¶¶ 8-10.) Nor are the unsubstantiated assertions of "plaintiffs' investigation of defendants' infringing activity, including the activity of defendants Flowers by Zoe, Canteen, Inc and So Nikki, Inc." (*see id.* at ¶ 7) sufficient to excuse the delay in view of the fact that the Declaration of Mitchell Feig, Plaintiffs' principal, in support of the application for preliminary relief is dated October 6, 2009, seven weeks before it was filed.

In sum, as Plaintiffs' delay is not explainable by either "ignorance of [Defendants'] competing product or [Plaintiffs'] good faith efforts to investigate the alleged infringement," said delay justifies denial of the preliminary injunction on the basis of lack of irreparable harm. *Tough Traveler*, 60 F.3d at 968.

Given the nature of the claims, however, the Court shall order expedited discovery and an expedited trial on the merits. To that end, this matter is respectfully referred to Magistrate Judge Tomlinson to establish and oversee an expedited discovery schedule; the trial of this matter shall commence on April 5, 2010.

Dated: Central Islip, New York
      December 30, 2009

/s/_____
Denis R, Hurley
Senior District Judge